T.C. Memo. 2003-299

UNITED STATES TAX COURT

HERMAN N. AND VERONICA WELTER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5041-01.                    Filed October 29, 2003.

Ps incorporated their farming operations in 1993.
Prior to the incorporation, P-H engaged in commodities
trading activities through several brokerage accounts.
After the incorporation, P-H continued to engage in
such activities through those accounts. Ps treated the
gains and losses from P-H's commodities trading
activities as ordinary income or loss, as applicable,
on their 1994-96 Federal income tax returns.

<u>Held</u>: Since P-H's commodities trading activities
do not constitute hedging transactions, gains and
losses therefrom are capital in nature.

<u>Held</u>, <u>further</u>, Ps are liable for penalties under
sec. 6662, I.R.C., as determined by R.

<u>Bob A. Goldman</u>, for petitioners.

<u>Lisa K. Hartnett</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HALPERN, Judge:  By notice of deficiency dated January 22, 2001 (the notice of deficiency), respondent determined deficiencies in, and penalties with respect to, petitioners' Federal income tax as follows:

| Year | Deficiency | Penalty (Sec. 6662(a)) |
|------|-----------|------------------------|
| 1994 | $25,310 | $5,062.00 |
| 1995 | 3,749 | -0- |
| 1996 | 19,408 | 3,881.60 |

Petitioners timely filed a petition for redetermination.  The issues for decision are whether petitioners:  (1) Properly characterized gains and losses (i.e., as ordinary rather than capital) attributable to petitioner Herman Welter's commodities trading activities during the years at issue and (2) are liable for the penalties determined by respondent.[1]

Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

_____

[1]  The parties stipulated that petitioners improperly omitted from income in 1995 and 1996 amounts attributable to a sec. 481 adjustment resulting from a prior audit.  The parties further stipulated:  (1) Petitioners are entitled to increased standard deductions for 1995 and 1996, and (2) respondent's adjustments relating to a net operating loss deduction for 1995, self-employment income for 1995 and 1996, and Social Security benefits for 1994, 1995, and 1996 are computational.  We need not further discuss those issues.

FINDINGS OF FACT

Some facts are stipulated and are so found.  The stipulation of facts, with accompanying exhibits, is incorporated herein by this reference.  At the time they filed the petition, petitioners resided in Onslow, Iowa.

For many years prior to the years at issue, petitioners engaged in farming operations in Jones County, Iowa.  In 1993, petitioners incorporated their farming operations by transferring their farming equipment, grain, and livestock to two subchapter C corporations:  Welter Seed & Honey Co. and Land of Milk & Honey Farms, Inc. (the corporations).  Petitioners retained ownership of their farmland and leased it to the corporations for use in the corporations' farming operations.  Petitioners also received a modest salary from the corporations.

During the years at issue, each of the corporations maintained its own books and records, had its own bank account, and filed Federal income tax returns.  One of the corporations, Land of Milk & Honey Farms, Inc., is listed as the "producer" and the "operator" on Government forms relating to Federal agricultural subsidy programs for each of those years.

Prior to the incorporation of petitioners' farming operations, petitioner Herman Welter (Mr. Welter) engaged in commodities trading activities through several brokerage accounts.  Mr. Welter continued to engage in such activities

through those accounts after the incorporation, without transferring the accounts to the corporations. Petitioners represented to respondent that they continued to maintain the brokerage accounts in Mr. Welter's name after the incorporation as a matter of convenience and to avoid additional filing and account maintenance fees and expenses. During the years at issue, Mr. Welter's commodities trading activity consisted primarily of futures transactions in soybeans, oats, and corn.

On their Federal income tax returns for the years at issue, petitioners reported the following amounts as gain or loss from Mr. Welter's commodities trading activity:

| Year | Gain (Loss) |
|------|-------------|
| 1994 | ($189,164.00) |
| 1995 | 33,248.07 |
| 1996 | (142,345.30) |

In each instance, petitioners treated the gain or loss as ordinary income or loss. In the notice of deficiency, respondent recharacterized such amounts as capital gain or loss, as applicable.

## OPINION

### I. Commodities Trading Activity

#### A. Arguments of the Parties

Petitioners claim ordinary income and loss treatment with respect to Mr. Welter's commodities trading activity on the ground that such activity consisted of hedging transactions

within the meaning of 26 C.F.R. section 1.1221-2 (1996) (former section 1.1221-2). Respondent contends, among other things, that Mr. Welter's commodities trading activity is not described in former section 1.1221-2.

B. Law

The term "capital asset" includes all classes of property not specifically excluded by section 1221. Sec. 1.1221-1(a), Income Tax Regs. Section 1221, as in effect during the years at issue, did not contain a specific exclusion relating to hedging transactions. However, former section 1.1221-2(a)(1) provided that, notwithstanding section 1.1221-1(a), Income Tax Regs., the term "capital asset" does not include property that is part of a hedging transaction.[2] Former section 1.1221-2(b) defined the term "hedging transaction" as follows:[3]

> (b) Hedging transaction defined. A hedging transaction is a transaction that a taxpayer enters into in the normal course of the taxpayer's trade or business primarily –
>
> (1) To reduce risk of price changes or currency fluctuations with respect to ordinary

---

[2] That regulatory exclusion was codified in 1999. See sec. 1221(a)(7) and (b)(2), added by the Ticket to Work and Work Incentives Improvement Act of 1999, Pub. L. 106-170, sec. 532(a)(3), 113 Stat. 1928.

[3] Former sec. 1.1221-2(g)(2)(i) provided that, in the case of transactions entered into prior to Oct. 1, 1994, taxpayers could rely on the rules of sec. 1.1221-2T, Temporary Income Tax Regs., 58 Fed. Reg. 54037 (Oct. 20, 1993) (former sec. 1.1221-2T). The definitions of "hedging transaction" in former sec. 1.1221-2(b) and former sec. 1.1221-2T(b)(1), respectively, are substantially identical.

property * * * that is held or to be held by the taxpayer; or

(2) To reduce risk of interest rate or price changes or currency fluctuations with respect to borrowings made or to be made, or ordinary obligations incurred or to be incurred, by the taxpayer.

C.  Discussion

At trial, Mr. Welter testified that he engaged in commodities trading primarily "to reduce the risk from the grain that we have to buy."  However, petitioners stipulated that they did not produce any commodities during the years at issue and the corporations conducted all of the farming operations in question. Essentially, petitioners contend that they and the corporations should be treated as a single economic unit for purposes of applying former section 1.1221-2(b).

Unfortunately for petitioners, their position is undercut both by the language of former section 1.1221-2(b) and by long-standing principles of Federal income taxation.  Former section 1.1221-2(b) clearly contemplates that, in order for a transaction to qualify as a hedging transaction, the taxpayer entering into the transaction and the taxpayer whose risk is thereby hedged must be one and the same.  Furthermore, it is axiomatic that: (1) Absent extraordinary circumstances, a corporation's business is not attributable to its shareholders for tax purposes, see Burnet v. Clark, 287 U.S. 410 (1932), and (2) a person who chooses the corporate form to conduct his business activities may

not subsequently disregard that form in order to gain a tax advantage, see <u>Moline Props., Inc. v. Commissioner</u>, 319 U.S. 436 (1943).

We recently decided a case presenting a question similar to the question in this case. In <u>Pine Creek Farms, Ltd. v. Commissioner</u>, T.C. Memo. 2001-176, the taxpayer-corporation raised corn, soybeans, and cattle. It also engaged in commodities trading activities involving corn, soybeans, cattle, and hogs, treating the losses therefrom as ordinary losses. The Commissioner recharacterized the portion of the overall loss attributable to hog futures as a capital loss, notwithstanding that the taxpayer's majority shareholder was a major shareholder of two other closely held corporations that conducted hog farrowing and hog finishing operations, respectively. In upholding respondent's determination, we stated:

> Therefore, the business transactions of * * * [the corporations engaged in the hog business] cannot be attributed to * * * [the common shareholder] and from * * * [the common shareholder] to petitioner. We find no exceptional circumstances which would cause us to ignore the corporate entities and attribute the production of hogs to petitioner. While it may have been easier for * * * [the common shareholder] to maintain all the hedging transactions in one account under petitioner's name, the hog futures transactions cannot be treated as hedging transactions of petitioner. * * *

Under the reasoning of <u>Pine Creek Farms, Ltd. v. Commissioner</u>, <u>supra</u>, the business activities of the corporations cannot be attributed to Mr. Welter. Petitioners do not argue

that the corporations were devoid of substance or were merely Mr. Welter's alter egos; indeed, the evidence points to the contrary. Thus, while it may have been more convenient for Mr. Welter to maintain the existing brokerage accounts in his own name following the incorporation of petitioners' farming operations, the commodities transactions he engaged in through those accounts during the years at issue do not qualify as hedging transactions within the meaning of former section 1.1221-2(b). It follows that gains and losses attributable to such transactions are capital in nature. We therefore sustain respondent's adjustments with respect to Mr. Welter's commodities trading activity.

II. <u>Penalties</u>

Section 6662 imposes a penalty equal to 20 percent of the portion of any underpayment which is attributable to, among other things, a substantial understatement of income tax. Sec. 6662(a) and (b)(2). An understatement of income tax is deemed substantial if it exceeds the greater of: (1) 10 percent of the tax required to be shown on the return for the year, or (2) $5,000. Sec. 6662(d)(1)(A). For these purposes, the amount of an understatement is reduced to the extent it is attributable to a position (1) for which there is substantial authority, or (2) which the taxpayer adequately disclosed on his return and for which there is a reasonable basis. Sec. 6662(d)(2)(B). In addition, the section 6662 penalty does not apply to the extent

the taxpayer can show that there was a reasonable cause for the underpayment and that he acted in good faith with respect thereto.  Sec. 6664(c)(1).

Giving effect to respondent's adjustments in the notice of deficiency, petitioners' tax liabilities for 1994 and 1996 were $26,258 and $20,785, respectively.[4]  Petitioners reported tax of $948 and $1,377 for those years.  Since each of the resulting understatements of $25,310 and $19,408 is greater than $5,000, those understatements are substantial within the meaning of section 6662(d)(1)(A).[5]  Petitioners do not contend that any mitigating factors apply (e.g., substantial authority or adequate disclosure), and petitioners' counsel conceded at trial that the issue is purely computational.  Accordingly, petitioners are liable for penalties under section 6662 as determined by respondent.

To reflect the foregoing,

Decision will be entered

for respondent.

---

[4]  Because their commodities trading losses were capital in nature, petitioners are entitled to deduct only $3,000 of such losses for each of the years at issue.  See sec. 1211(b). Regarding respondent's other adjustments, see supra note 1.

[5]  Ten percent of the tax required to be shown on petitioners' 1994 return is $2,626, and 10 percent of the tax required to be shown on petitioners' 1996 return is $2,079. Since $5,000 is greater than each of those amounts, that figure controls for purposes of determining the existence of substantial understatements in this case.  See sec. 6662(d)(1)(A).